**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: <br><br> CARDIOVASCULAR MEDICAL ASSOCIATES P.C., <br><br> Debtor. | Chapter 11 <br><br> Case No. 18-12314 (MDC) |

**CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY CARDIOVASCULAR
MEDICAL ASSOCIATES P.C., THE DEBTOR AND DEBTOR-IN-POSSESSION**

**BIELLI & KLAUDER, LLC**
Thomas D. Bielli, Esquire
David M. Klauder, Esquire
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Telephone: 215-642-8271
Facsimile: 215-754-4177
tbielli@bk-legal.com
dklauder@bk-legal.com

*Counsel for the Debtor,
Cardiovascular Medical Associates, P.C.*

## TABLE OF CONTENTS

Page

**ARTICLE I Introduction** ...................................................................................................... 4
**ARTICLE II Definitions** ....................................................................................................... 4
**ARTICLE III Classification of Claims** ................................................................................. 9
    3.1.    **Class 1.** ............................................................................................... 9
    3.2.    **Class 2.** ............................................................................................... 9
    3.3.    **Class 3.** ............................................................................................... 9
    3.4.    **Class 4.** ............................................................................................... 9
    3.5.    Administrative and Unsecured Priority Tax Claims .............................. 9
    3.6.    Priority Non-Tax Claims. ...................................................................... 9
    3.7.    Acceptance or Rejection of Plan. ....................................................... 10
**ARTICLE IV Treatment of Classes of Claim** .................................................................... 10
    4.1.    **Class 1.** ............................................................................................. 10
    4.2.    **Class 2.** ............................................................................................. 10
    4.3.    **Class 3.** ............................................................................................. 10
    4.4.    **Class 4.** ............................................................................................. 11
**ARTICLE V Treatment of Unclassified Claims** ................................................................ 11
    5.1.    Administrative Claims. ....................................................................... 11
**ARTICLE VI Provisions for Execution of the Plan** ......................................................... 13
    6.1.    Possession of Assets ......................................................................... 13
    6.2.    Execution of Documents .................................................................... 13
    6.3.    Alterations, Amendments, or Modifications ....................................... 13
    6.4.    Disbursing Agent ................................................................................ 13
    6.5.    Final Decree ....................................................................................... 13
    6.6.    Retention and Enforcement of Claims ............................................... 13
    6.7.    Means for Implementation of the Plan. .............................................. 13
    6.8.    Actions Taken to Decrease Expenses and Increase Income. .......... 13
**ARTICLE VII Additional Provisions Applicable to All Classes** ..................................... 14
**ARTICLE VIII Provisions Governing Distributions and General Provisions** ............. 14
    8.1    Distributions ........................................................................................ 14
    8.2    Treatment of Executory Contracts and Unexpired Leases. ............. 15
    8.3    Notices ................................................................................................ 15
    8.4    Default ................................................................................................. 16
**ARTICLE IX Effects of Confirmation** ............................................................................... 16
    9.1    **Term of Injunctions or Stays.** ......................................................... 16
    9.2    **Exculpation.** ..................................................................................... 16
    9.3    Failure to Pay Taxes. ......................................................................... 16
**ARTICLE X Cramdown Provisions and Confirmation Request** .................................. 17
**ARTICLE XI Modification of the Plan** .............................................................................. 17
    11.1    Pre-Confirmation Modification ........................................................... 17
    11.2    Post-Consummation Modification ..................................................... 17
    11.3    Non-Material Modifications ................................................................ 17
**ARTICLE XII Causes of Action** ........................................................................................ 17
    13.1    Litigation ............................................................................................. 17
    13.2    Powers ................................................................................................ 17

**ARTICLE XIII Miscellaneous**.................................................................................................. 17
    14.1        Choice of Law ........................................................................................ 17
    14.2        Payment of Statutory Fees ..................................................................... 18
    14.3        Discharge of Debtor and Effect of Confirmation Order ..................... 18
    14.4        Severability ............................................................................................. 18
    14.5        Successors and Assigns ......................................................................... 18
    14.6        Binding Effect ......................................................................................... 18
    14.7        Withholding and Reporting Requirements ......................................... 18
**ARTICLE XIV Provisions for Resolving and Treating Claims** ..................................... 18
    15.1        Objections ................................................................................................ 18
    15.2        Prosecution of Objections ..................................................................... 19
    15.3        No Distributions Pending Allowance ................................................... 19
    15.4        Distributions After Allowance ............................................................... 19

## ARTICLE I
### Introduction

On April 6, 2018, Cardiovascular Medical Associates, P.C. (the "Debtor"), the Debtor and Debtor-in-Possession, commenced a bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

The Debtor was formed as a Pennsylvania professional corporation on May 3, 1982. The Debtor is owned by two physicians that also serves as the Debtor's President and Vice President, Dr. Philip Nimoityn and Dr. Kenneth Rosenberg, respectively. The Debtor operated as a provider of specialized medical services with a focus on cardiovascular issues and treatments. Dr. Nimoityn and Dr. Rosenberg were responsible for managing the care of the Debtor's patients and were supported by a staff of nurses and administrative personnel.

This document is the Chapter 11 plan (the "Plan") proposed by the Debtor. Sent to you in the same envelope as this document is the Disclosure Statement, which has been approved by the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court"), and which is provided to help you understand the Plan.

This is a Plan of liquidation. In other words, the Debtor seeks to accomplish payments under the Plan through the liquidation sale of its assets. The Effective Date of the proposed Plan is sixty (60) days after the Confirmation Order is entered by the Court.

## ARTICLE II
### Definitions

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires. Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

2.1. "ADMINISTRATIVE CLAIM" means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the chapter 11 case allowable under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2.2. "ADMINISTRATIVE CLAIMANT" means the holder of an Administrative Claim.

2.3. "AFFILIATE" has the meaning provided in Section 101(2) of the Bankruptcy Code.

2.4. "AFFILIATE CLAIMS" means any Claims held by an Affiliate.

2.5. "ALLOWANCE DATE" means the date a Claim becomes an Allowed Claim.

4

2.6.     "ALLOWED" The use of the term "Allowed" with reference to a Claim (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the Debtor's bankruptcy schedules (including any amendments thereto) filed in this case as of the confirmation date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor; (b) is set forth in a proof of claim properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof, and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

2.7.     "ALLOWED CLAIM" means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

2.8.     "ASSETS" means all of the Debtor's property, real and personal, tangible and intangible, including without limitation accounts receivable, goods, chattel paper, documents, instruments, money, fixtures, contract rights, Causes of Action, Claims and rights of any kind, wherever situated, together with the proceeds thereof.

2.9.     "BANKRUPTCY CODE" or "CODE" means Title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

2.10.    "BANKRUPTCY COURT" or "COURT" means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

2.11.    "BANKRUPTCY RULES" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and promulgated by the Supreme Court of the United States, as well as applicable Local Rules of Bankruptcy Procedure in the Eastern District of Pennsylvania.

2.12.    "BAR DATE" means the last date fixed by order of the Court for the filing of proofs of claim.

2.13.    "BUSINESS DAY" means any day except a Saturday, Sunday, or other day on which commercial banks located in the Commonwealth of Pennsylvania are authorized by law to close.

2.14.    "CASE" means the case of the Debtor under chapter 11 of the Bankruptcy Code presently captioned: *In re: Cardiovascular Medical Associates, P.C.*, Bankruptcy No. 18-12314 (MDC).

2.15. "CAUSES OF ACTION" means all Claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

2.16. "CLAIM" means a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

2.17. "CLAIMANT" means a person or entity holding a Claim (including, his, her or its successors, assigns, heirs, executors, or personal representatives) under the Plan.

2.18. "CLASS" means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan.

2.19. "CONFIRMATION DATE" means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to Section 1129 of the Bankruptcy Code becomes a Final Order.

2.20. "CONFIRMATION HEARING" means the hearing at which the Court considers confirmation of this Plan.

2.21. "CONFIRMATION ORDER" means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

2.22. "CONTESTED CLAIM" means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a final order or a Claim which is scheduled as contingent or disputed.

2.23. "CREDITOR" means the holder of a Claim against the Debtor.

2.24. "CRITICAL VENDOR" means a vendor offering materials or services upon which the Debtor's business depends and for which the Debtor's business would be critically, negatively impacted if the Debtor had to replace the vendor.

2.25. "DEBTOR" means Cardiovascular Medical Associates, P.C. as its interest may appear.

2.26. "DEFICIENCY CLAIM" means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed

Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

2.27. "DISBURSING AGENT" has the meaning given to such term in Section 6.4 hereof.

2.28. "DISPUTED CLAIM" means any Claim which is scheduled as disputed, contingent, or unliquidated, or which is objected to in whole or in part before the Effective Date.

2.29. "DISTRIBUTION" means any payment by the Debtor to a Claimant on account of a Claim.

2.30. "EFFECTIVE DATE" means sixty (60) days after the Confirmation Order becomes a Final Order. However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

2.31. "FEE CLAIM" means a Claim under Sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Case.

2.32. "FINAL ORDER" means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

2.33. "IMPAIRED CLASS" means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.34. "INSIDER" means any "insider" as that term is defined in Paragraphs (B), (E) or (F) of Section 101(31) of the Bankruptcy Code.

2.35. "LIEN" means, with respect to any of the Assets of the Debtor, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

2.36. "PERSON" means a person within the meaning of Section 101(41) of the Bankruptcy Code.

2.37. "PETITION DATE" means April 6, 2018, the date upon which the Debtor filed its Petition.

2.38. "PETITION" means the voluntary petition filed by the Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code.

2.39. "PLAN" means this Plan of Liquidation, as it may be further amended, modified, or supplemented from time to time, and any exhibits and schedules thereto.

2.40. "PLAN PROPONENT" means the Debtor.

2.41. "PNC" means PNC Bank, a secured creditor of the Debtor.

2.42. "POST-EFFECTIVE-DATE DEBTOR" means the Debtor after the Effective Date.

2.43. "PRIORITY NON-TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under Sections 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

2.44. "PRIORITY TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(8) of the Bankruptcy Code.

2.45. "PRO RATA" means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears the aggregate amount of all Claims of such Class, including Contested Claims.

2.46. "PROPERTY" means all property, real and personal, owned by the Debtor.

2.47. "REJECTION CLAIM" means any Claim for amounts due as a result of the rejection of any executory contract or lease which is rejected by the Debtor by Final Order.

2.48. "SCHEDULES" means the schedules of assets and liabilities filed by the Debtor with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007, as amended from time to time.

2.49. "SECURED CLAIM" shall mean a Claim that is (a) secured by a valid, perfected, and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a Claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured Claim in such assets.

2.50. "TERM SHEET" means the Term Sheet for Settlement and Wind Down Agreement Between the Debtor and PNC Bank, N.A. A copy of the Term Sheet is annexed hereto as Exhibit A.

2.51. "UNIMPAIRED CLASS" means any Class of Claims which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.52. "UNSECURED CLAIM" means any Claim, whether or not disputed, liquidated or contingent, including a Rejection Claim or a Deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim, or Secured Claim.

## ARTICLE III
## Classification of Claims

As required by the Bankruptcy Code, the Plan classifies Claims in various Classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims is Impaired or Unimpaired. The Plan provides the treatment each Class will receive under the Plan. A proof of claim asserting a Claim which is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.

3.1. **Class 1.** **Secured Claim of PNC Bank, N.A. ("PNC").** Class 1 consists of the Secured Claim of PNC. The Class 1 Claim is Impaired under the Plan.

3.2. **Class 2.** **Other Secured Claims.** Class 2 consists of the Secured Claims held by GreatAmerica Financial Services Corp. and the Pennsylvania Department of Revenue, which total approximately $5,600.00. Class 2 is Impaired under the Plan.

3.3. **Class 3.** **General Unsecured Claims.** Class 3 consists of the Allowed General Unsecured Claims. Class 3 Claims include all penalties of any priority Claims not otherwise classified herein, and any unsecured portions of Class 1 and 2 Claims. The Class 3 Claims are Impaired under the Plan.

3.4. **Class 4.** **Equity Holders.** Class 4 includes all equity, ownership, or stock interests in the Debtor including all warrants, options, or rights to acquire shares whether issued or not and whether contained in a single document or part of a loan document or debt instrument. Class 4 Claims are Impaired under the Plan.

3.5. Administrative and Unsecured Priority Tax Claims. As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Unsecured Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article V of this Plan. As of the time of filing of the Plan, Administrative Claims, including professional fees, are estimated to be $65,000.00. Unsecured Priority Tax Claims are estimated to be $32,970.34. The treatment and payment of these Claims is addressed in Section 5(1)(f) of this Plan, *infra*.

3.6. Priority Non-Tax Claims. Priority Non-Tax Claims also are not classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article V of this Plan. As of the time of filing of this Plan, Priority Non-Tax Claims totaled approximately $0.00.

3.7. <u>Acceptance or Rejection of Plan.</u> Each Impaired Class of Creditors with Claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such Class that have accepted or rejected the Plan. If any Impaired Class of Creditors shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor will request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

## ARTICLE IV
### Treatment of Classes of Claim

4.1. **Class 1.** <u>Secured Claim of PNC</u>. Class 1 is Impaired. The Class 1 Creditor holds a pre-petition Secured Claim against the Debtor based on a loan made to the Debtor.

As of the Petition Date, the amount of the PNC's Secured Claim was $189,973.45. The collateral for the PNC Secured Claim consists of all of the Debtor's assets. The Debtor and PNC entered into an agreement (the "Term Sheet") designating certain payments to be made to PNC in exchange for the satisfaction of PNC's Secured Claim.

Pursuant to the Term Sheet, PNC will receive a payment of $100,000.00 from the collection of the Debtor's remaining accounts receivable. PNC will also receive 80% of the net proceeds from the sale of the Debtor's remaining assets.

As a result of the treatment of the Class 1 Creditor under the Debtor's Plan, PNC will receive less than the full amount of the PNC Secured Claim. The treatment and consideration of the Class 1 Claim pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of the Claim.

4.2. **Class 2.** <u>Other Secured Claims.</u> Class 2 is Impaired. The Class 2 Claimants are GreatAmerica Financial Services Corp. and the Pennsylvania Department of Revenue, which total approximately $5,600.00. The Class 2 Claims shall receive pro rata distributions from the net proceeds resulting from the collections of the Debtor's remaining accounts receivable the sale of the Debtor's remaining assets. These distributions will be made from the proceeds remaining after PNC's payments required under the Term Sheet are made.

As a result of the treatment of the Class 2 Creditors under the Debtor's Plan, the Class 2 Creditors may receive less than the full amount of their Secured Claims. The Debtor estimates that the Class 2 Creditors will receive 80-100% of the amounts of their Secured Claims. The treatment and consideration of the Class 2 Claims pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of the Claim.

4.3. **Class 3.** <u>General Unsecured Claims.</u> Class 3 is Impaired. Class 3 Claims total approximately $925,310.82, not including any amounts of Class 1 and/or 2 Claims which may be determined to be unsecured and which will also be included in Class 3 Claims. Those

amounts have yet to be determined.

The Class 3 Creditors shall receive pro rata distributions from the net proceeds resulting from the collections of the Debtor's remaining accounts receivable the sale of the Debtor's remaining assets. These distributions will be made from the proceeds remaining after the Class 1 and 2 Claims are satisfied as set forth above.

As a result of the treatment of the Class 3 Creditors under the Debtor's Plan, the Class 3 Creditors will receive less than the full amount of their Claims. The Debtor estimates that the Class 3 Creditors will receive 0-5% of the amounts of their Secured Claims. The treatment and consideration of the Class 2 Claims pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of the Claim.

4.4. **Class 4.** **Equity Holders**. Class 4 consists of original equity holders in the Debtor. Holders of Class 4 Claims shall not receive a distribution under the Plan and their equity interests will be cancelled.

## ARTICLE V
## Treatment of Unclassified Claims

5.1. Administrative Claims. Section 1129(a)(9)(A) of the Code requires a plan to provide for payment of all administrative tax liabilities in full as of the effective date of a plan without the need for such taxing authority to file an Administrative Claim. All Administrative Claims shall be treated as follows:

a. Time for Filing Administrative Claims. The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Claim within ninety (90) days after the Effective Date. Such notice must include at minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim and (iii) the basis of the Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

b. Time for Filing Fee Claims. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than sixty (60) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. To the extent permitted by law, any professional person's Fee Claim shall be permitted to include in its request for payment of a Fee Claim fees and expenses incurred for the preparation, filing and prosecution of such Fee Claim. No motion or application is required to fix fees payable to the clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

c. Allowance of Administrative Claims. An Administrative Claim with respect to which notice has been properly filed pursuant to Section 5.1(a) of this Plan shall

become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to its fee application has been properly filed pursuant to Section 5.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order. Fee Applications shall be filed on or before the 60th day from the day the Confirmation Order is signed and entered upon the docket.

   d. <u>Payment of Allowed Administrative Claim</u>. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date and so long as such modification of treatment made by the Debtor and any holder of an Allowed Administrative Claim does not impair any other Class, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

   e. <u>Professional Fees Incurred After the Effective Date</u>. Any professional fees incurred by the Reorganized Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

   f. <u>Priority Unsecured Tax Claims</u>. Priority Unsecured Tax Claims are certain unsecured income, employment, payroll, sales and other taxes, along with applicable interest, described by Bankruptcy Code sections 507(a)(8) and 511. In this case, these Claims are: (a) the Internal Revenue Service, holding an Unsecured Claim of approximately $1,185.00; and (b) the City of Philadelphia, holding an Unsecured Claim of approximately $31,785.34. Each holder of a Priority Tax Claim will, to the extent that sufficient proceeds are generated, be paid in full, through a single payment of cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; and in a manner not less favorable than the most favored Nonpriority Unsecured Claim provided for by the Plan (other than cash payments made to a Class of Creditors under Bankruptcy Code Section 1122(b)), upon the later of the effective date of this Plan, or the date on which such Claim is allowed by a Final Order. Each Holder of a Priority Unsecured Tax Claim shall retain its claim until paid in full according to the Plan.

   g. <u>Priority Non-Tax Claims.</u> Priority Non-Tax Claims in this Case arise under Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) for the Debtor's employees' wages, salaries, and other associated benefits not paid within 180 days prior to the Petition Date. As of the filing of this Plan, the Debtor estimates that Priority Non-Tax Claims total approximately $0.

# ARTICLE VI
## Provisions for Execution of the Plan

6.1. Possession of Assets. All of the assets of the Debtor shall remain in the possession of the Debtor.

6.2. Execution of Documents. Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

6.3. Alterations, Amendments, or Modifications. This Plan may be altered, amended, or modified by the Debtor before or after the Confirmation Date, as provided in Section 1127 of the Bankruptcy Code.

6.4. Disbursing Agent. The Debtor shall be the Disbursing Agent ("Disbursing Agent") herein. The Disbursing Agent shall have the sole and exclusive right to make the distributions required by the Plan. The Disbursing Agent may hold or invest the funds in one or more accounts, provided that all investments shall be made in accordance with Section 345 of the Bankruptcy Code. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

6.5. Final Decree. After final distributions are made, the Post-Effective-Date Debtor shall file a motion to close the case and request that a final decree be issued. The Debtor shall file all interim and final Plan implementation reports and pay any fees to the Office of the United States Trustee.

6.6. Retention and Enforcement of Claims. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, the Post-Effective-Date Debtor shall retain and may enforce any and all Claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

6.7. Means for Implementation of the Plan. The Debtor will, to the extent possible, collect on the Debtor's remaining accounts receivable. The Debtor will also, through private sale or sales after marketing the assets and soliciting offers, sell the Debtor's remaining assets, consisting of medical equipment and supplies, to the individual or entity that submits the highest offer for immediate purchase.

6.8. Actions Taken to Decrease Expenses and Increase Income. The Debtor has already ceased operations and will conduct the collection of its accounts receivable and the sale of its assets in a manner reasonably calculated to result in the highest net proceeds.

## ARTICLE VII
## Additional Provisions Applicable to All Classes

7.1. The payments, distributions and other treatments provided in respect of each Allowed Claim in the Plan shall be in full settlement and complete satisfaction discharge and release of such Allowed Claim. As to claims of the Internal Revenue Service, discharge of any tax debt under this Plan shall not be effective until paid in full.

7.2. Notwithstanding any of the provisions of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim which at such date or time are disputed, unliquidated, or contingent shall not be made until such Claim becomes an Allowed Claim, whereupon such payment and distribution shall be made promptly pursuant to and in accordance with this Plan.

## ARTICLE VIII
## Provisions Governing Distributions and General Provisions

8.1 **Distributions**. Distributions pursuant to this Plan shall be made by the Disbursing Agent as provided herein and shall be made, unless otherwise provided herein, pursuant to the relevant Plan provisions, or as soon as practicable thereafter or as may be otherwise ordered by the Court. Distributions will be made after the Debtor has either (i) collected all of its accounts receivable and sold all of its assets or (ii) made reasonable efforts to collect its accounts receivable and sell its assets and determined that the remaining accounts and assets cannot be collected on and/or sold.

   a. **Delivery of Distributions**. Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest. All Claims for undeliverable distributions must be made to the Disbursing Agent on or before ninety (90) days after the respective distribution was made. After that date, all unclaimed property will become property of the Reorganized Debtor, and the Claim of any holder with respect to such property will be discharged and forever barred.

   b. **Means of Cash Payment**. Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank, or by wire transfer from a domestic bank. All cash distributions will be made by the Disbursing Agent.

   c. **Time Bar to Cash Payments**. Checks issued by the Disbursing Agent in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days of the date of their issuance. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim with respect to which the check originally was issued. Any Claim relating to a voided check must be made on or before ninety (90) days after the date the check was voided. After the date, all Claims will be discharged and forever barred and the cash, including interest earned, shall be revested in the Debtor.

d. <u>Setoffs</u>. The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any Claims of any nature whatsoever the Debtor may have against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such Claim the Debtor may have against such Claimant. The Commonwealth of Pennsylvania, Department of Taxation reserves its rights to preserve deposits and waive setoff rights.

e. <u>De Minimis Distributions</u>. No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any Creditor unless a request is made in writing to Debtor to make such a payment.

f. <u>Saturday, Sunday or Legal Holiday</u>. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

8.2    <u>Treatment of Executory Contracts and Unexpired Leases</u>. Certain unexpired executory contracts and leases are listed on **Exhibit B** to this Plan and Disclosure Statement. Those executory contracts and leases are proposed to be rejected as of the Effective Date; provided, however, that the Debtor may remove any contract or lease from Exhibit B at any time on or before the Effective Date. Each counterparty to an executory contract whose contract is to be rejected (and that has not already been assumed or rejected in the Bankruptcy Case) shall be entitled to file, no later than thirty (30) days following the Effective Date, a proof of claim for any damages arising from the rejection of the contract pursuant to § 365 of the Bankruptcy Code. The failure of the counterparty to a rejected contract to file a proof of claim within the proscribed time period will forever bar such person from asserting any claim for rejection damages. The filing of any such proof of claim on account of rejection damages will not preclude the estate or the Debtor from objecting to such claim if appropriate. Each counterparty to an executory contract whose contract is to be assumed (and that has not already been assumed or rejected in the Bankruptcy Case) shall be entitled to file a cure claim objection, no later than twenty (20) days following the date on which the Debtor serves a notice of proposed cure claim on such counterparty. In the event the Debtor and the counterparty are unable to agree as to the amount of the cure claim, the parties may seek intervention from the Bankruptcy Court; provided, however, that nothing shall prohibit the Debtor from removing the contract from the list of assumed contracts and rejecting such contract in the event the parties are unable to reconcile an agreed cure claim amount.

8.3    <u>Notices</u>. Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified mail, return receipt requested, and if sent to:

15

      a.      If to the Debtor, addressed to:

> Cardiovascular Medical Associates, P.C.
> 818 Chestnut St.
> Philadelphia, PA 19107

With copies to:

      b.      Counsel:

> Thomas D. Bielli, Esquire
> BIELLI & KLAUDER, LLC
> 1500 Walnut Street, Suite 900
> Philadelphia, PA 19102

      8.4    <u>Default</u>. No default shall be declared under this Plan unless and until any payment due under this Plan has not have been made within thirty (30) days after written notice to the Reorganized Debtor and counsel for the Debtor. As to defaults regarding Tax Claims, if the debtor defaults, the taxing authority will give notice to the Debtor of the default. Upon notice of default, the debtor will have thirty (30) days to cure the default. If the Debtor fails to cure the default, the taxing authority may immediately exercise its administrative rights to fully collect the remaining debt.

**ARTICLE IX**
**<u>Effects of Confirmation</u>**

      9.1    **<u>Term of Injunctions or Stays.</u>** **Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to Section 362(a) of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date at which time the injunction under Section IX a shall be in force.**

      9.2    **<u>Exculpation.</u> Following the Effective Date, none of the professional persons employed by the Debtor, its employees, or its agents, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case; provided, however, that the provisions of this Article shall have no effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

      9.3    Failure to Pay Taxes. Notwithstanding any other language in this Section, a taxing authority's pursuit of the Debtor for Debtor's failure to pay tax liabilities arising post-petition shall not violate any provisions of the Plan.

## ARTICLE X
### Cramdown Provisions and Confirmation Request

10.1     If sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provision of Section 1129(b) of the Bankruptcy Code.

## ARTICLE XI
### Modification of the Plan

11.1     Pre-Confirmation Modification.  At any time before the Confirmation Date, the Plan may be modified by the Debtor upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

11.2     Post-Consummation Modification.  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Debtor upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under these sections, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

11.3     Non-Material Modifications.  At any time, the Debtor may, without the approval of the Court, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## ARTICLE XII
### Causes of Action

13.1     Litigation.  Except as otherwise provided in the section of this Plan entitled "Powers," the Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Bankruptcy Rules with respect to any Cause of Action.

13.2     Powers.  The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its discretion.

## ARTICLE XIII
### Miscellaneous

14.1     Choice of Law.  Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

14.2  **Payment of Statutory Fees**. All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to Section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date. Moreover, all post-confirmation quarterly fees shall be paid by the Reorganized Debtor as and when they become due until the Bankruptcy Case is closed.

14.3  **Discharge of Debtor and Effect of Confirmation Order**. Except as provided in Section 1141(d) of the Bankruptcy Code and as otherwise provided in the Plan, the provisions of the Plan and the Confirmation Order shall bind the Reorganized Debtor and all holders of Claims and will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code and whether or not such holder is impaired under the Plan and whether or not such holder has accepted the Plan, and shall terminate all rights, Claims of such holder, except as provided in the Plan.

Notwithstanding the forgoing, the discharge granted by Bankruptcy Code Section 1141(d) is modified as to the Secured and/or Priority Tax Claim(s) provided for in this Plan, and the discharge of any Secured and/or Priority Tax Claim(s) under this Plan shall not be effective until all Secured and/or Priority Tax Claim(s) provided for in the Plan have been paid in full.

14.4  **Severability**. Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

14.5  **Successors and Assigns**. The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

14.6  **Binding Effect**. The Plan will be binding upon and inure to the benefit of the Debtor, its Creditors, and their respective successors and assigns.

14.7  **Withholding and Reporting Requirements**. In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

### ARTICLE XIV
### Provisions for Resolving and Treating Claims

15.1  **Objections**. Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any Claim not previously allowed by

final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated. The Debtor shall file all such objections on or before the 60th day from the Effective Date of the Court's Confirmation Order.

15.2  *Prosecution of Objections*.  After the date of entry of the Confirmation Order, only the Debtor will have authority to file objections, litigate to judgment, or settle or withdraw objections to Contested Claims.

15.3  *No Distributions Pending Allowance*.  No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim. If only a portion of a Claim is disputed (and in the absence of a basis for set off or counterclaim), the distribution will be made on a pro rata basis on the uncontested portion of the Claim, pending resolution of the portion which is disputed.

15.4  *Distributions After Allowance*.  Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs as soon as practicable after the date that the order or judgment of the Court allowing the Claim becomes a Final Order.

**CARDIOVASCULAR MEDICAL ASSOCIATES P.C.**
Debtor and Debtor-in-Possession

Dated: September 14, 2018    By:    */s/ Philip Nimoityn*
Philip Nimoityn, M.D.
President

**BIELLI & KLAUDER, LLC**

*/s/ Thomas D. Bielli*
Thomas D. Bielli, Esquire
David M. Klauder, Esq
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
Telephone: 215-642-8271
Facsimile: 215-754-4177
tbielli@bk-legal.com
dklauder@bk-legal.com

*Counsel for the Debtor,
Cardiovascular Medical Associates, P.C.*