# Exhibit A

# [EXHIBIT 1 – TERM SHEET]

**In re Cardiovascular Medical Associates, P.C.**
**Bankruptcy No. 18-12314-MDC**

**Term Sheet for Settlement and Wind Down Agreement**
**Between the Debtor and PNC Bank, N.A.**

1.     Subject to the terms set forth herein, in full satisfaction of its claims against the Debtor, Cardiovascular Medical Associates, P.C. (the "Debtor"), PNC shall accept: (A) cash payments totaling $100,000 in the aggregate to be paid as set forth herein; and (B) 80% of the net proceeds of the sale of the Debtor's equipment, fixtures, and inventory (collectively, the "Remaining Physical Assets").

2.     PNC consents to the proposed sale of the Medical Records (as defined in the sale motion filed by the Debtor on July 3, 2018) to CCP for $20,000 (the "Sale Proceeds").  The Order approving the sale to CCP shall provide that PNC's liens shall attach to the Sale Proceeds, subject to the Debtor's settlement agreement with PNC.

3.     On or before July 31, 2018, the Debtor shall make a cash payment of $50,000 (the "First Cash Payment") to PNC.  The Debtor represents that the First Cash Payment shall be funded exclusively from collected accounts receivable and that no portion of the First Cash Payment is being funded by the Sale Proceeds.

4.     If any portion of the First Cash Payment will be funded by the Sale Proceeds, the Debtor shall obtain from CCP a completed Certification Regarding Beneficial Owners of Legal Entity form (which form was previously provided by PNC to the Debtor) and provide such completed form to PNC (along with any additional information required for PNC to comply with federal anti-money laundering and anti-terrorism regulations with respect to the Sale Proceeds) prior to July 31, 2018.

5.     Subject to the Debtor's compliance with Paragraphs 3 and 4 hereof, any cash held by the Debtor as of July 31, 2018 (after payment in full of the First Cash Payment), shall be retained by the Debtor's bankruptcy estate and may be used in the Debtor's discretion to fund administrative expenses of the estate.

6.     The Debtor's medical practice shall cease operating after July 31, 2018.

7.     The Debtor shall retain whatever administrative staff is necessary (in its discretion) for the orderly collection of the Debtor's accounts receivable and the prompt and orderly sale of Remaining Physical Assets.

8.     On August 3, August 17, and August 31, 2018, the Debtor shall provide PNC (through counsel) with a current accounts receivable aging.

9.     On or before September 14, 2018, the Debtor shall make an additional cash payment of $50,000 (the "Second Cash Payment") to PNC.  The Second Cash Payment shall be paid in

120320903_1

installments to PNC on August 17, August 31, and September 14, 2018 (each an "Installment Payment").

    A.    The Installment Payment due on August 17 shall be equal to 75% of the accounts receivable collected by the Debtor between August 1, 2018 and August 16, 2018;

    B.    The Installment Payment due on August 31, 2018 shall be equal to 75% of the accounts receivable collected by the Debtor between August 17, 2018 and August 30, 2018;

    C.    The Installment Payment due on September 14, 2018 shall be equal to the balance due on the Second Cash Payment after application of the prior Installment Payments;

    D.    Notwithstanding anything to the contrary herein, the aggregate of the Installment Payments shall not exceed $50,000;

10.    Subject to the Debtor's compliance with Paragraph 9 hereof, 25% of the accounts receivable collected by the Debtor after August 1, 2018 may be retained by the Debtor's bankruptcy estate and used in the Debtor's discretion to fund administrative expenses of the estate.

11.    Subject to the Debtor's compliance with Paragraph 9 hereof, any cash held by the Debtor as of September 14, 2018 (after payment in full of the Second Cash Payment) shall be retained by the Debtor's bankruptcy estate and may be used in the Debtor's discretion to fund administrative expenses of the estate.

12.    As soon as practicable after July 31, 2018, the Debtor shall begin marketing for sale the Remaining Physical Assets. The sale price for any proposed sale of the Remaining Physical Assets shall be subject to approval by PNC and the Debtor shall keep PNC apprised of its efforts to sell the Remaining Physical Assets.

13.    Subject to the Debtor's compliance with Paragraph 12 hereof, PNC shall accept 80% of the net proceeds of the sale of the Remaining Physical Assets (the "Equipment Payment"), after payment of any superior liens and after deduction of the usual, customary and reasonable closing costs (excluding the Debtor's legal fees), in full satisfaction of its liens thereon. The Equipment Payment shall be paid to PNC at closing of the sale of the Remaining Physical Assets. The remaining 20% of the net proceeds of the sale of the Remaining Physical Assets shall be retained by the Debtor's bankruptcy estate. The Debtor shall make good faith efforts to sell the Remaining Physical Assets.

14.    PNC and the Debtor will collaborate as to the disposition of any Remaining Physical Assets that the parties determine to be of minimal or no market value.

15.    Any disputes between the Debtor and PNC regarding the Debtor's sale of the Remaining Physical Assets shall be resolved by the Bankruptcy Court.

16.     Provided that the Debtor has otherwise complied with the terms set forth herein, upon payment to PNC of the First Cash Payment, the Second Cash Payment, and the Equipment Payment, PNC shall: (A) waive any additional amounts owed to PNC on account of its claims against the Debtor; (B) file a UCC termination statement terminating its liens against the Debtor's assets; and (C) release any claims that PNC has against guarantors Philip Nimoityn, M.D. and Kenneth C. Rosenberg, M.D.

17.     The terms set forth herein remain subject to further documentation between the Debtor and PNC (either through a settlement agreement or proposed chapter 11 plan) and approval by the Bankruptcy Court.

120320903_1